

SP+ Corporation
200 E Randolph St
Suite 7700
Chicago, IL 60601
312-274-2000

spplus.com  parking.com  bagsinc.com

October 1, 2021

Jeries Tadros
13832 S 84th Ave
Orland Park, IL 60462

Dear Jeries:

I am pleased to confirm our offer of promotion to become a Regional Manager I, subject to the terms and conditions in this letter and the execution of the enclosed Confidentiality and Non-Competition Agreement, a copy of which is attached and made a part of your terms of employment (hereinafter referred to as the "Confidentiality Agreement").

The following is a summary of our offer of promotion:

| | |
|---|---|
| **Position:** | Regional Manager I located in Chicago and surrounding area, reporting to Robert Alva, effective October 1, 2021. |
| **Compensation:** | **Base Salary:** Your annualized salary will be $130,000 (currently paid on a semi-monthly basis). Base salary is reviewed and potentially adjusted annually based on the company's and individual's performance in the prior year. You will not be eligible for a 2022 increase. |
| | In addition to your base compensation, you will participate in the company's Performance Based Compensation (PBS) program, effective for the 2021 program year. The PBC program pays incentive compensation based on your success and that of the company at meeting program metrics. The target bonus opportunity and incentive goals are subject to change annually; the current annual target for the RMII role is $10,500. This target will be prorated to reflect your promotion. PBC payments are made in the spring of the following year, i.e., year 2021 payments will be made in March 2022. You must be employed on the date the bonus is paid in order to be eligible. |
| **Health & Welfare and Retirement Plans:** | Your health & welfare benefits will remain the same. |
| **Salary Continuation upon termination of employment:** | In the event your employment is terminated by the Company for any other reason than for cause, subject to and conditioned upon your execution of a Confidential Severance Agreement and General Release which shall contain confirmation of your agreement to strictly comply with the Confidentiality Agreement, you will receive base salary continuation payments at the rate in effect the day before your date of termination, for a period not to exceed six (6) months after the date of termination. |

PARKING    TRANSPORTATION    FACILITY MAINTENANCE    EVENT LOGISTICS    BAGS    CONSULTING

August 13, 2021
Page 2

Jeries, if you agree to the terms and conditions outlined above, please complete and acknowledge your acceptance by signing this letter and returning to me.

Congratulations on your promotion. Please contact me should you have any questions.

Sincerely,

Robert Alva
Vice President


Accepted: _____     10/1/2021
Jeries Tadros                        Date

## SP+

## AND ITS AFFILIATED ENTITIES

## AGREEMENT REGARDING CONFIDENTIALITY AND NON-COMPETITION

Employee understands that Employee is or will be employed by or enter into a relationship with SP Plus Corporation, its affiliates, parent, and/or subsidiaries, as well as any of their respective predecessors, successors and assigns (collectively "the Company"), and will learn and have access to the Company's confidential, trade secret and proprietary information. Employee understands that the products and services that the Company develops, provides and markets are unique. Further, Employee agrees that Employee's promises in this Agreement are an important way for the Company to protect its proprietary interests.

The Company is in the business of providing an array of commercial and residential service related businesses, including, operating private and public parking facilities for itself, its subsidiaries, affiliates and others, and as a consultant and/or manager for parking facilities operated by others throughout the United States and Canada, providing on-street and off-street parking enforcement, maintenance, residential and commercial property management services, security services for commercial establishments and airport and urban transportation services and specialized transportation plans and services for major national and international sporting and special event venues, (the Company and its subsidiaries and affiliates and other Company-controlled businesses engaged in parking garage management (in each case including their predecessor's or successor's) are referred to hereinafter as the "Company").

In the course of Employee's employment hereunder, Employee will have access to highly confidential and proprietary information of the Company and its customers, including without limitation the information referred to in paragraphs 1 and 3 below.

The Company is engaged in a business which is highly specialized, the identity and particular needs of the Company's customers are not generally known, and the documents and information regarding the Company's customers, employees, temporary personnel, services, products, technology, sales techniques, methods of operation, pricing, and costs are highly confidential.

The Employee understands and acknowledges that the Company has expended significant resources over many years to identify, develop, and maintain its customers. The Employee additionally acknowledges that many of the Company's customers have had continuous and long-standing relationships with the Company and that, as a result of these close, long-term relationships, the Company possesses significant knowledge of and confidential information about its customers and their needs. Finally, the Employee acknowledges the Employee's association and contact with these customers is derived solely from Employee's employment with the Company. The Employee further acknowledges that the Company does business throughout the United States and Canada..

The Company and Employee agree these recitals are material terms of this Agreement.

Employee acknowledges that Employee has been given an opportunity to have this Agreement reviewed by an attorney and that Employee is not relying on legal advice provided by the Company or any Company personnel.

In addition to other good and valuable consideration, Employee is expressly being given employment, continued employment, a promotion, a relationship with the Company, certain monies, benefits, training and/or trade secrets and confidential information of the Company and its

customers, to which Employee would not have access but for Employee's relationship with the Company in exchange for Employee's agreeing to the terms of this Agreement as follows:

1. **Protection of Confidential Information** Employee will not, without the Company's prior written permission, directly or indirectly utilize for any purpose other than performance of Employee's employment duties for the Company, or disclose to anyone outside of the Company, either during or after Employee's employment with the Company, any confidential information provided to or obtained by Employee in the course of Employee's employment with the Company or trade secrets of the Company, or any information received by the Company in confidence from or about third parties, as long as such matters remain trade secrets or confidential. Trade secrets and other confidential information shall include any information or material which is not generally known to the public, and which (a) is generated or collected by or utilized in the operations of the Company and relates to the actual or anticipated business or research or development of the Company or the Company's actual or prospective customers; or (b) is suggested by or results from any task assigned to Employee by the Company or work performed by Employee for or on behalf of the Company or any customer of the Company. Confidential information shall not be considered generally known to the public if revealed improperly to the public by Employee or others without the Company's express written consent and/or in violation of an obligation of confidentiality to the Company. Examples of confidential information include, but are not limited to, customer, employees and temporary personnel identification and contacts, non-public information about customers, business relationships, contract provisions, pricing, margins, business plans, marketing plans, financial data, business and customer strategy, techniques, models, software, solutions, discussion guides, personal or performance information about employees, research and development, patent applications and plans or proposals related to the foregoing. The confidentiality obligations herein shall not prohibit Employee from divulging confidential information or trade secrets by order of court or agency of competent jurisdiction or as required by law; however, Employee shall promptly inform the Company of any such situations and shall take reasonable steps to prevent disclosure of confidential information or trade secrets until the Company has been informed of such required disclosure and has had a reasonable opportunity to seek a protective order.

2. **Return of Property and Copying** Employee agrees that all tangible materials (whether originals or duplicates), including, but not limited to notebooks, computers, files, reports, proposals, price lists, lists of actual or potential customers or suppliers, talent lists, models, specifications, technical data, methodologies, research results, financial data, contracts, agreements, correspondence, documents, computer disks, software, computer printouts, information stored electronically, memoranda, and notes, in Employee's possession or control which in any way relate to the Company's business and which are furnished to Employee by or on behalf of the Company or which are prepared, compiled or acquired by Employee while working with or employed by the Company shall be the sole property of the Company. Employee will at any time upon the request of the Company and in any event promptly upon termination of Employee's employment with the Company, but in any event no later than two (2) business days after such termination, deliver all such materials to the Company and will not retain any originals or copies of such materials. Except to the extent approved by the Company or required by Employee's bona fide job duties for the Company, Employee also agrees that Employee will not copy or remove from the Company's place of business or the place of business of a customer of the Company property or information belonging to the Company or a customer or entrusted to the Company or a customer. In addition, Employee agrees that Employee will not provide any such materials to any competitor of the Company unless specifically required by Employee's bona fide job duties for the Company.

3. **Protection of Proprietary Interests**

   (a) Employee agrees that during Employee's employment with the Company, and for a period of 12 months thereafter, Employee will not, directly or indirectly, on behalf of Employee or

2

any other person, company or entity, solicit or participate in soliciting any person, company or entity for products or services competitive with or similar to products or services offered by, developed by, designed by or distributed by the Company, if that person, company or entity was a customer or potential customer of the Company for such products or services with which Employee had direct contact or about which Employee learned confidential information related to such products or services at any time during the 12 months preceding the termination of Employee's employment with the Company.

(b) Employee agrees that during Employee's employment with the Company, and for a period of 12 months thereafter, Employee will not, directly or indirectly, on behalf of Employee or any other person, company or entity, offer, provide or sell or participate in offering, providing or selling, products or services competitive with or similar to products or services offered by, developed by, designed by or distributed by the Company to any person, company or entity which was a customer or potential customer of the Company for such products or services and with which Employee had direct contact regarding such products or services at any time during the 12 months preceding the termination of Employee's employment with the Company.

(c) Employee agrees that during Employee's employment with the Company, and for a period of 12 months thereafter, Employee will not directly or indirectly, on behalf of Employee or in conjunction with any other person, company or entity, own (other than 5% ownership in a publicly traded the Company), manage, operate, or participate in the ownership, management, operation, or control of, or be employed by any entity which is in competition with the Company within a 75 mile radius of any of the Company offices from which Employee worked during the 12 months preceding the termination of Employee's employment with the Company.

(d) Employee agrees that during Employee's employment with the Company and for a period of 12 months thereafter, Employee will not, nor will Employee assist any third party to, directly or indirectly (i) raid, hire, solicit, or attempt to persuade any employee or temporary employee of the Company or any person who was an employee of the Company during the 12 months preceding the termination of Employee's employment with the Company, who possesses confidential information of the Company, to leave the employ of the Company; (ii) interfere with the performance by any such persons of their duties for the Company; or (iii) communicate with any such persons for the purposes described in items (i) and (ii) in this paragraph.

(e) Employee agrees that during Employee's employment with the Company, and for a period of 12 months thereafter, Employee will not, directly or indirectly, on behalf of Employee or any other person, company or entity, utilize or reveal the identity of or contract or relationship terms with any customer, employee or temporary personnel used by or served by the Company at any time during the 12 months preceding the termination of Employee's employment with the Company.

(f) Employee agrees that during Employee's employment with the Company, and for a period of 12 months thereafter, Employee will not, directly or indirectly, become employed or engaged by or affiliated with any person, company or entity that was a customer of the Company during the 12 months preceding the termination of Employee's employment with the Company, in any capacity in which Employee would provide products, services or support competitive with or similar to the products, services, or support offered by, performed by, developed by or created by Employee for the Company during the 12 months preceding the termination of Employee's employment with the Company.

(g) Employee agrees that nothing in this Section 3 shall limit Employee's obligations under Section 1 of this Agreement.

3

4. **Best Efforts** Employee agrees that during Employee's employment with the Company, Employee will devote Employee's best efforts to the performance of Employee's duties and the advancement of the Company and shall not engage in any other employment, profitable activities, or other pursuits which would cause Employee to utilize or disclose the Company's confidential information or trade secrets, or reflect adversely on the Company. This obligation shall include, but is not limited to, obtaining the Company's consent prior to performing tasks for customers of the Company outside of Employee's customary duties for the Company, giving speeches or writing articles about the business of the Company, improperly using the name of the Company, or identifying Employee's association or position with the Company in a manner that reflects unfavorably upon the Company.

5. **Certification** Employee agrees not to disclose to the Company, or use in Employee's work for the Company, any confidential information and/or trade secrets belonging to others, including without limitation, Employee's prior employers, or any prior inventions made by Employee and which the Company is not otherwise legally entitled to learn of or use. Furthermore, by executing this Agreement, Employee certifies that Employee is not subject to any restrictive covenants and/or obligations that would prevent Employee from fully performing Employee's duties for the Company. Employee also agree that the Company may contact any employer or prospective employer of Employee to inform them of Employee's obligations under this Agreement and that Employee shall affirmatively provide this Agreement to all subsequent employers.

6. **Choice of Law, Jurisdiction, Injunctive Relief and Attorney's Fees** Employee consents to the law of Illinois being applied to any matter arising out of or relating to this Agreement, without regard to its conflict of law principles. Further, Employee agrees and consents to the exclusive jurisdiction for any matter arising out of this Agreement or interpreting this Agreement in the state and federal courts of Chicago, Illinois. In the event of a breach or a threatened breach of this Agreement, by Employee, Employee acknowledges that the Company will face irreparable injury which may be difficult to calculate in dollar terms and that the Company shall be entitled to, in addition to remedies otherwise available at law or in equity, temporary restraining orders and preliminary injunctions and final injunctions without the posting of a bond enjoining such breach or threatened breach. Should the Company successfully enforce any portion of this Agreement before a trier of fact, the Company shall be entitled to all of its reasonable attorney's fees, expenses and costs incurred as a result of enforcing this Agreement against Employee.

7. **Amendment, Severability and Merger** Except as set forth in paragraph 9 below, with respect to the subject matter hereof, this Agreement is Employee's entire agreement with the Company, and it supersedes all previous oral or written understandings or agreements, if any, made by or with the Company regarding the same subject matter. No waiver of any breach of any provision of this Agreement by the Company shall be effective unless it is in writing and no waiver shall be construed to be a waiver of any succeeding breach or as a modification of such provision. The provisions of this Agreement shall be severable and if any provision of this Agreement is found by any court to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be enforceable and binding on the parties. Employee also agrees that a court may modify any invalid, overbroad or unenforceable term of this Agreement so that such term, as modified, is valid and enforceable under applicable law. Also, Employee agrees that a court may also extend the length of this Agreement for any period of time in which Employee is in breach of this Agreement or as necessary to protect the legitimate business interests of the Company. Further, Employee affirmatively state that Employee has not, will not and cannot rely on any representations not expressly made herein. The terms of this Agreement shall not be amended by Employee or the Company except by the express written consent of the Company and Employee. The section headings in this Agreement are for convenience of reference and in no way define, limit or affect the meaning of this Agreement.

4

8. **At-Will** Employee acknowledges that nothing in this Agreement is intended to require that Employee continue Employee's employment or relationship with the Company for any particular length of time or to require that the Company continue Employee's employment, relationship or compensation for any particular length of time. Employee agrees that Employee is an at-will employee and can be terminated at any time for any reason. Employee acknowledges that the restrictions and covenants set forth in this Agreement shall survive termination of Employee's relationship with the Company for any reason.

9. **Acknowledgment of Obligations** Employee acknowledges that Employee's obligations under this Agreement are in addition to, and do not limit, any and all obligations concerning the same subject matter arising under any applicable law including, without limitation, common law relating to fiduciary duties and common law and statutory law relating to trade secrets.

10. **Cooperation** Employee agree to cooperate in the truthful and honest prosecution and/or defense of any third party claim in which the Company may have an interest subject to reasonable limitations concerning time and place, which may include without limitation making Employee available to participate in any proceeding involving the Company, allowing Employee to be interviewed by representatives of the Company, appearing for depositions and testimony without requiring a subpoena, and producing and/or providing any documents or names of other persons with relevant information; provided that, if such services are required after the termination of Employee's employment with the Company, the Company shall provide Employee reasonable compensation for the time actually expended in such endeavors and shall pay Employee's reasonable expenses incurred at the prior and specific request of the Company.

11. **Non-Disparagement** Employee agrees that during Employee's employment with the Company and for a period of 12 months thereafter, Employee will not make any statement or criticism which is adverse to the interests of the Company, its customers or its vendors; nor will Employee take any action that may reasonably cause the Company, its customers or its vendors embarrassment, humiliation, or otherwise cause or contribute to the Company, its customers or its vendors being held in disrepute by the public or the Company's customers, vendors or employees.

12. **Assignability** The rights and/or obligations herein may be assigned by the Company without Employee's consent and shall bind and inure to the benefit of the Company's successors, assigns, and representatives. If the Company makes any assignment of the rights and/or obligations herein, Employee agrees that this Agreement shall remain binding upon Employee in any event.

13. **Change of Position** Employee acknowledges and agrees that any change in Employee's position or title with the Company shall not cause this Agreement to terminate and shall not effect any change in Employee's obligations under this Agreement.

14. **Acceptance** Employee agrees that this Agreement is accepted by Employee through Employee's original or facsimile signature. Employee further agrees that the Company is deemed to have accepted this Agreement as evidenced by Employee's employment with the Company, the payment of wages or monies to Employee, the provision of benefits to Employee, or by executing this Agreement.

15. **Binding Effect** This Agreement, and the obligations hereunder, shall be binding upon Employee and Employee's successors, heirs, executors, and representatives.

16. **Notices.** Any notice which any party shall be required or shall desire to serve upon the other shall be in writing and shall be delivered personally or sent by registered or certified mail, postage prepaid, or sent by facsimile or prepaid overnight courier, to the parties at the addresses set forth below (or such other addresses as shall be specified by the parties by like notice):

5

In the case of Employee to:   Jeries Tadros
                              13832 S 84th Ave
                              Orland Park, IL 60462

In the case of the Company to:   SP Plus Corporation
                                 200 E. Randolph Suite 7700
                                 Chicago, IL 60601
                                 Attention: General Counsel

Agreed to by:

_____
Employee Signature

__Jeries Tadros__
Employee's Printed Name

Date: __10/1/2021__

SP Plus Corporation

By: _____

Date: __10/1/21__

6