UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SP PLUS LLC, <br><br> Plaintiff, <br><br> v. <br><br> JERIES TADROS, <br><br> Defendant. | Case No. 1:25-cv-05825 <br><br> DEMAND FOR JURY TRIAL |

**DEFENDANT JERIES TADROS'S
BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT *IN PART***

Defendant Jeries Tadros ("Defendant" or "Tadros") submits this Brief in Support of his Motion to Dismiss the Complaint in Part.

**I. INTRODUCDTION[1]**

Plaintiff SP Plus LLC ("Plaintiff" or "SP Plus") provides parking facility management and related services, including parking management, ground transportation, luggage logistics, and event logistics in Chicago and throughout North America, as well as in Europe. Compl., ECF No. 1 at ¶¶ 1, 5–7. SP Plus hired Defendant in January 2008 and promoted him to "Regional Manager I" on October 1, 2021. *Id*. at ¶ 24. At that time, SP Plus also presented Tadros with a "Restrictive Covenant" agreement, which he signed. ECF No. 1-1 at 3. The Restrictive Covenant contains a non-solicitation restriction at paragraph 3(a) and a direct non-compete restriction at

---

[1] For purposes of the Motion and this Brief in Support only, Tadros accepts as true the well-pleaded allegations in the Complaint and uses them as the basis for the Introduction section consistent with *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

1

paragraph 3(b). Both provisions apply to restrict Tadros's activities only as to SP Plus customers or potential customers with which Tadros had direct contact within the last 12 months of his employment at SP Plus (and in the case of the non-solicitation provision, if Tadros learned confidential information about the customer during the last 12 months of his employment with SP Plus). In addition, the Restrictive Covenant contains another, broader non-compete restriction at paragraph 3(c), which purports to prohibit Tadros from merely being employed by any business that competes with SP Plus within 75 miles of its Chicago office where Tadros worked, regardless of Tadros's role or responsibilities with the other company, regardless of where Tadros works for the other company, and regardless of whether Tadros's work at the other company actually competes with SP Plus at all. *Id.* at § 3(c).

Tadros submitted his two-week notice of resignation from SP Plus on November 22, 2024, after which SP Plus waived the notice period and made November 25, 2025, Tadros's last day worked at SP Plus. Compl. at 1, ¶¶ 22, 37. Tadros worked in Chicago for the entirety of his employment at SP Plus. After SP Plus, Tadros started working for LAZ Parking, LLC ("LAZ"), which is a competitor of SP Plus that also has operations in Chicago as well as throughout the United States and in Canada. *Id.*, at 1, ¶2.

As it relates to this Motion, Count I of the Complaint (the "Breach of Contract" claim) accuses Tadros of (1) violating the "Non-Solicitation Provision" (paragraph 3(a)) and the "Direct Noncompete Provision" (paragraph 3(b)) of the Restrictive Covenant by allegedly soliciting a single SP Plus customer, who Plaintiff identifies in the Complaint only by the pseudonym "Customer A," and a single potential SP Plus customer, who Plaintiff identifies in the Complaint only by the pseudonym "Customer B"; and (2) violating the "Indirect Noncompete Provision" (paragraph 3(c) of the Restrictive Covenant) by accepting employment with LAZ in any position

2

regardless of where Tadros works because LAZ as an entity competes with SP Plus within 75 miles of its Chicago office. *See* Compl., ECF No. 1 at Count I.

Count I of the Complaint must be dismissed for two reasons. First, as to the Non-Solicitation Provision and the Direct Non-Compete Provision (paragraphs 3(a) and 3(b), respectively) of the Restrictive Covenant, the Complaint lacks any specific allegations sufficient to plausibly plead that Tadros violated either. SP Plus fails to identify "Customer A" or "Customer B" at all, and then also fails to allege that Tadros had direct contact with each during the last 12 months he was employed with SP Plus (or that Tadros learned confidential information about them during his last 12 months of employment) so as qualify either as "Restricted Clients" under those provisions.

Second, with respect to the Indirect Non-Compete Provision (paragraph 3(c) of the Restrictive Covenant), SP Plus seeks to bar Tadros from working in any capacity for any competitor anywhere in the world if that competitor has operations within 75 miles of SP Plus's Chicago office where Tadros was employed. This provision is hopelessly overbroad and unenforceable under Illinois law.

## II. LEGAL STANDARD

"A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (cleaned up) (referring to Fed. R. Civ. P. 8(a)(2)). Claims that are not facially plausible must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Id*.; *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). A claim that is merely "conceivable" is not sufficient; it must rise to the level of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires plaintiffs to plead

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plausibility under *Twombly/Iqbal* is "context specific"; the greater the factual complexity, the more specificity the complaint requires. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011); *Tactical Med. Sols., Inc. v. Karl*, 2015 WL 13943105, at *2 (N.D. Ill. Sept. 21, 2015). In assessing the sufficiency of a complaint, courts accept only well-pleaded facts as true; statements of law or unsupported conclusory factual allegations are not entitled to the presumption of truth. *See Adams*, 742 F.3d at 728; *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Plaintiffs cannot survive a motion to dismiss by relying on a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Lyons v. Equifax Info. Servs., LLC*, 455 F.Supp.3d 746, 748 (N.D. Ill. 2020).

### III.  ARGUMENT

**A.  SP Plus Failed to Sufficiently Plead that Tadros Violated the Non-Solicitation or the Direct Non-Compete Provisions of the Restrictive Covenant.**

SP Plus's Count I breach of contract claim must be dismissed to the extent SP Plus predicates it on allegations that Tadros violated the Non-Solicitation or the Direct Non-Compete Provisions of the Restrictive Covenant because SP Plus's Complaint allegations do not amount to a plausible breach of either. A plausible breach of contract claim requires that a plaintiff plead facts to support the existence of a valid agreement between the parties, that the plaintiff substantially performed its contractual obligations, that the defendant breached its contractual obligations, and resulting damages to the plaintiff. *E.g.*, *Preferred Landscape and Lighting, LLC v. Alban*, 162 F.Supp.3d 746, 749 (N.D. Ill. 2016). Where a plaintiff fails to plead facts to support that the defendant breached the contract at issue, the plaintiff's breach of contract claim must be

4

dismissed. *E.g.*, *Kasongo v. Am. Gen. Life Ins. Co.*, 479 F.Supp.3d 754, 758 (N.D. Ill. 2020) (cleaned up).

Here, the Non-Solicitation and the Direct Non-Compete Provisions of the Restrictive Covenant each prohibit Tadros's conduct only with respect to SP Plus's customers and prospective customers with whom Tadros had direct contact or learned confidential information during the last 12 months of his employment at SP Plus (the "Restricted Clients"). The terms of those provisions state as follow:

> **Non-Solicitation Provision**: "… during his employment and for a period of 12 months thereafter, he would not "directly or indirectly, on behalf of [himself] or any other person, company, or entity solicit or participate in soliciting any person, company or entity for products or services competitive with or similar to products or services offered by, developed by, designed or distributed by [SP Plus], **if that person, company or entity was a customer or potential customer of [SP Plus]** for such products or services **with which [Tadros] had direct contact or about which [Tadros] learned confidential information** related to such products or services at any time **during the 12 months preceding the termination of [his] employment with [SP Plus]."**

Restrictive Covenant at § 3(a), ECF No. 1-1 at 5 (bolding added).

> **Direct Non-Compete Provision**: "… during [his] employment with [SP Plus], and for a period of 12 months thereafter, [Tadros] will not, directly or indirectly, on behalf of [himself] or any other person, company or entity, offer, provide or sell or participate in offering, providing or selling, products or services competitive with or similar to products or services offered by, developed by, designed by or distributed by [SP Plus] to any person, company or entity which was a customer or potential customer of [SP Plus] for such products or services **and with which [Tadros] had direct contact regarding such products or services at any time during the 12 months preceding the termination of [his] employment with [SP Plus]**."

Restrictive Covenant at § 3(b), ECF No. 1-1 at 5 (bolding added).

In the Complaint, SP Plus failed to plead any non-conclusory facts to support a claim that Tadros has solicited or serviced any Restricted Clients of SP Plus. Instead, Plaintiff makes only veiled references to Tadros's alleged involvement in attempts to solicit for LAZ an unnamed

5

"Customer A" and prospective "Customer B." *Id.* at ¶¶ 41–48. But there is no allegation of facts to establish that either "Customer A" or "Customer B" are Restricted Clients with whom Tadros had direct contact (or about whom he learned confidential information) within the last 12 months of his employment at SP Plus.

Moreover, SP Plus's unilateral use of the pseudonyms "Customer A" and "Customer B" in the Complaint without leave from the Court in a restricting order after a showing of good cause is wholly improper under Local Rule 26.2 as well as the Court's practices and procedures for confidentiality orders. It also violates Tadros's due process rights and the public's right to access judicial records. Local Rule 26.2 specifically provides that for good cause shown the Court may enter an order directing that one-or-more documents be restricted but that "[n]o attorney or party may file a restricted document without prior order of the court specifying the particular document or portion of a document that may be filed as restricted."

Here, Plaintiff filed a Complaint in which on its own initiative and without any showing of good cause or permission from the Court it hid the names of "Customer A" and "Customer B" from Defendant and the public. SP Plus's unilateral use of the pseudonyms also interferes with Defendant's due process rights to notice of Plaintiff's allegations and claims, as well as the public's right to access unredacted judicial records. *See Doe v. Cook Cnty., Ill.*, 542 F.Supp.3d 779, 784 (N.D. Ill. 2021) ("The presumption of openness in judicial proceedings is not easily overcome").

Looking beyond the hiding of their identities, the Complaint merely alleges that Tadros had "regular, direct contact" with "Customer A," that "[Tadros] knew confidential information," and that "Customer A" terminated its relationship with SP Plus without providing a reason. *Id.* at ¶¶ 42-43. These are insufficient, thread-bare allegations that omit basic details necessary to render SP Plus's contractual claim plausible under the Direct Non-Compete Provision. Details such as

6

the identity and location of "Customer A," and whether Tadros had direct contact with or learned confidential information about "Customer A" during the last 12 months of his employment with SP Plus to qualify as a Restricted Client are omitted. Also omitted is any allegation based on a supporting factual basis that Tadros's actions caused "Customer A" to leave SP Plus.[2]

The Complaint is even more opaque about "Customer B." SP Plus alleges that Tadros "assisted" another former SP Plus employee, Mr. Dardovski, in soliciting for LAZ "Customer B," who is described as a prospective SP Plus customer, and that on October 25, 2024, Tadros sent a meeting invitation with the subject line "Customer B Proposal" to Dardovski's personal email address. Compl., ECF No. 1 at ¶¶ 44–45. That's it. But, just as SP Plus failed to allege the name of "Customer B," SP Plus did not allege any facts to demonstrate that Tadros had direct contact with "Customer B" or learned of any of "Customer B"'s confidential information during the last 12 months of his employment with SP Plus to render "Customer B" a Restricted Client. Alleging that Tadros emailed Mr. Dardovski a meeting invite that in the title was "Customer B's name and the word "proposal," without even alleging "Customer B" was invited to a meeting or that the meeting occurred, is not enough. *E.g.*, *Deloitte & Touche LLP v.* Carlson, 2011 WL 2923865, at *3 (N.D. Ill. 2011).

Accordingly, the Complaint fails to plausibly plead that Tadros violated either the Non-Solicitation Provision or the Direct Non-Compete Provision of the Restrictive Covenant and Count I should be dismissed to the extent it is predicated on either provision. Alternatively, the Court should strike from the Complaint those allegations and claims referencing "Customer A" and/or "Customer B" based on Plaintiff's improper filing of a restricted document without making any showing of good cause or obtaining leave of Court to so file through a restricting order.

---

[2] The Complaint itself specifically states that "Customer A" did not give SP Plus a reason for the decision to cancel its contract with SP Plus. Compl. ¶ 43.

**B.  The Indirect Non-Compete Provision Is Overly Broad and Not Enforceable Under Illinois Law.**

SP Plus's Count I breach of contract claim must also be dismissed to the extent SP Plus predicates it on allegations that Tadros violated the Indirect Non-Compete Provision of the Restrictive Covenant (paragraph 3(c)) because that provision is overly broad and so constitutes an unreasonable restraint on trade and a hardship to Tadros, rendering it unenforceable under Illinois law. Courts only enforce reasonable non-compete agreements. *Stunfence, Inc. v. Gallagher Sec. (USA), Inc.*, 2002 WL 1838128, at *6 (Au. 9, 2002). A restrictive covenant is reasonable "only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee, (2) does not impose an undue hardship on the employee-promisor, and (3) is not injurious to the public." *Sirius Comput. Sols., Inc. v. Sachs*, 2020 WL 5253872, at *2 (N.D. Ill. Sept. 3, 2020). Courts determine reasonableness in Illinois by examining the hardship to the restricted party, the effect on the general public, and whether the temporal, geographic, and topical scopes are reasonable. *Id*. (citing *Lawrence and Allen, Inc. v. Cambridge Human Res. Grp., Inc.*, 292 Ill.App.3d 131 (1997). As restraints of free trade, noncompetes require "careful scrutiny" and must serve a legitimate business interest of the employer to be enforceable under Illinois law. *Id.*; *Medix Staffing Sols., Inc. v. Dumrauf*, 2018 WL 1859039, at *3 (Apr. 17, 2018).

Further, Illinois recognizes an employee's "fundamental right to use his [or her] general knowledge and skills to pursue the occupation for which he [or she] is best suited." *George S. May Int'l Co. v. Int'l Profit Assocs.*, 628 N.E.2d 647, 655 (Ill. App. 1993). In re cognition of that right, Illinois courts refuse to enforce noncompetes that impose blanket restrictions on working for competitors. *E.g.*, *Del Monte Fresh Prod. v. Chiquita Brands Int'l*, 616F.Supp.2d 805, 818 (N.D. Ill. 2009) (refusing to enforce noncompete barring a former Del Monte banana seller from "'being connected in *any manner* with' an entity that bought fruit, vegetables or other produce from Del

Monte"). In *Del Monte Fresh Prod.*, the court found the restrictions to be too broad to be enforceable, stating: "Under these terms, [defendant] could not work as a cashier at a Piggly-Wiggly that bought produce from Del Monte." *Id*. See also, *Telxon v. Hoffman*, 720 F.Supp.657, 665 (N.D. Ill. 1989) (refusing to enforce a noncompete that would have imposed a blanket restriction on working for a competitor in any capacity).

Unless a noncompete is tailored to activities similar to those the employee performed for the previous employer, the noncompete does not serve a legitimate business interest of the previous employer and it cannot be enforced. *Medix Staffing Sols., Inc.*, 2018 1859039 at *3; *Stunfence*, 2002 WL 1838128 at *6 (refusing to enforce a noncompete that was not limited geographically where the activities covered by the provision were extremely broad such that they were not tailored to the work the employee performed for the previous employer and, if enforced, would shut the employee out of the industry for the duration of the noncompete entirely).

Illinois courts also find non-competes overbroad and unenforceable if they lack a geographic scope. *See e.g.*, *Montel Aetnastak, Inc. v. Miessen*, 998 F.Supp.2d 694 (N.D. Ill. 2014); *Del Monte Fresh Prod., N.A., Inc. v. Chiquita Brands Int'l, Inc.*, 616 F.Supp.2d 805 (N.D. Ill. 2009); *Hay Grp. Inc. v. Bassick*, 2005 WL 2420415, at *3 (N.D. Ill. Sept. 29, 2005) (noncompetes without geographic boundaries are unenforceable). Such is the case here, where the terms of paragraph 3(c) of the Restrictive Covenant would, if enforced, prohibit Tadros from working for LAZ in any capacity anywhere in the world because LAZ has a location within 75 miles of SP Plus's Chicago office. Restrictive Covenant § 3(c), ECF No. 1-1 at 5.

Finally, while courts in Illinois have authority to blue-pencil unenforceable restrictive covenants to bring them into line with restrictions of trade reasonably necessary to protect the employer's legitimate, protectable business interests, where doing so requires a court to begin with

9

a blank slate the proper course of action is to strike the over-broad provision entirely. *Stinfence*, 2002 WL 1838128 at *7. Here, blue-penciling to try and save paragraph 3(c) of the Restrictive Covenant would be inappropriate for at least two reasons. First, it would require the Court to essentially rewrite the entire provision. Second, such rewriting is unnecessary as a narrower, more tailored non-compete restriction is already provided in paragraph 3(b) of the Restrictive Covenant, leaving paragraph 3(c) as a blatant overreach by SP Plus that was intended as a restraint on free and fair trade rather than to protect legitimate, protectable business interests.

To illustrate the absurd overbreadth of the Indirect Non-Competition provision (3(c) of the Restrictive Covenant), if enforced as written it would bar Tadros from relocating to work in the mail room or as a receptionist or janitor for LAZ at a location in Nepal (a location where neither LAZ nor SP Plus currently operate), because LAZ operates within 75 miles of SP Plus's Chicago office where Tadros used to work for SP Plus. Illinois courts have routinely refused to enforce such overly broad provisions. *E.g.*, *Del Monte Fresh Prod.*, 616 F.Supp.2d 805 (N.D. Ill. 2009) (declining to enforce a noncompete agreement without geographic limits, reasoning "even if [defendant] were to move to Lagos, Nigeria, she would still be bound by the restrictive covenant; this is unreasonable").

Accordingly, SP Plus's Count I breach of contract claim for violating the Indirect Non-Compete Provision is not actionable under Illinois law and paragraphs 25, 58 of the Complaint must be dismissed with prejudice.

### IV. CONCLUSION

For all the foregoing reasons, SP Plus has not sufficiently pled (a) that Tadros actionably breached either the Non-Solicitation or the Direct Non-Compete Provisions (paragraphs 3(a) and 3(b), respectively) of the Restrictive Covenant; or (b) the existence of a valid, enforceable Indirect Non-Compete Provision (paragraph 3(c) of the Restrictive Covenant). As such, Tadros respectfully

request that the Court dismiss Plaintiff's breach of contract claim (Count I) of the Complaint. In the event that Plaintiff is able to cure its pleading with respect to the alleged breach of paragraphs 3(a) and 3(b) of the Restrictive Covenant, then Plaintiff should be required to file an amended complaint without the use pseudonyms for the alleged "Customer A" and "Customer B," or with the pseudonyms only after making a showing of good cause and entry by this Court of a restricting order. Finally, because paragraph 3(c) of the Restrictive Covenant is overbroad and unenforceable under Illinois law, all claims related to that provision of Count I of the Complaint should be dismissed with prejudice.

Dated: July 29, 2025                  Respectfully submitted,

                                             */s/ Carolyn O. Boucek*
                                             Michael S. Ferrell (ARDC 6277458)
                                             Carolyn O. Boucek (ARDC 6346817)
                                             Epstein Becker Green, P.C.
                                             227 W. Monroe Street, Suite 4500
                                             Chicago, IL 60606
                                             mferrell@ebglaw.com
                                             cboucek@ebglaw.com
                                             *Counsel for Defendant Jeries Tadros*

## CERTIFICATE OF SERVICE

      The undersigned attorney certifies that a true and correct copy of the foregoing was served on all counsel of record via ECF on the date of filing as follows:

Timothy D. Elliott
Raymond J. Sanguinetti
RATHJE WOODWARD LLC
300 E. Roosevelt Road, Suite 220
Wheaton, Illinois 30187
telliott@rathjelaw.com
rsanguinetti@rathjelaw.com

Stephen D. Riden
BECK REED RIDEN, LLC
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
sriden@beckreed.com

*Counsel for Plaintiff*

                */s/ Carolyn O. Boucek*
                Michael S. Ferrell
                *Counsel for Defendant Jeries Tadros*