UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SP PLUS LLC,<br><br>Plaintiff,<br><br>v.<br><br>JERIES TADROS,<br><br>Defendant. | Case No. 1:25-cv-05825<br>Judge April M. Perry<br>Magistrate M. David Weisman |

**PLAINTIFF'S OPPOSITION TO DEFENDANT JERIES TADROS'S
MOTION TO DISMISS THE COMPLAINT, *IN PART***

SP Plus LLC ("SP Plus" or the "Company"), by and through its undersigned counsel, hereby submits its opposition to Defendant Jeries Tadros's Motion to Dismiss the Complaint, *In Part* (Dkt. No. 12) (the "Motion"). For the reasons set forth below, SP Plus respectfully asks the Court to deny the Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

As alleged in the Complaint, Tadros is a former SP Plus employee who worked for SP Plus primarily in the Chicago, Illinois market, where he provided parking facility management and related services. When he submitted his notice of voluntary resignation in November 2024, Tadros declined to provide information about where he planned to work following his departure from SP Plus. Instead, shortly after his departure from SP Plus, Tadros began working for LAZ Parking ("LAZ"), a direct competitor of SP Plus – a blatant violation of his Agreement Regarding Confidentiality and Non-Competition (the "Agreement") with SP Plus. To make matters worse, and in further violation of his Agreement, upon information and belief, Tadros has been working in tandem with another former SP Plus employee who is now at LAZ to solicit

SP Plus's customers and employees on behalf of their new employer. Tadros's misconduct further constitutes misappropriation of trade secrets in violation of federal and state law, and it also violates the nondisclosure provisions in the Agreement.

Consequently, SP Plus filed its original Complaint against Tadros on May 23, 2025, seeking monetary damages and injunctive relief based on three claims: (1) breach of contract (Count I); (2) misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq. (Count II); and, (3) misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1, et seq. (Count III).

On July 29, 2025, Tadros filed his Answer and Affirmative Defenses to the Complaint (Dkt. No. 14) as well as the Motion and his supporting Brief in Support of Motion to Dismiss Complaint in Part (the "Brief") (Dkt. Nos. 12-13). Through the Motion, Tadros seeks to dismiss only part of SP Plus's breach of contract claim (Count I)[1] on the grounds that the breach of the customer nonsolicit provision is insufficiently alleged (Motion, pp. 3-4), and that the noncompete provision of the Agreement is unenforceable under Illinois law (*id.*, p. 5). Each of these arguments is unpersuasive, and the Motion should be denied. In the alternative, Plaintiff seeks leave to amend the Complaint pursuant to Fed. R. Civ. P. 15(a) to cure any deficiencies.

## **ARGUMENT**

Fed. R. Civ. P. 8(a)(2) states that a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] In Paragraphs 63 and 64 of the Complaint, SP Plus alleges that Tadros further breached the Agreement by violating its nondisclosure and return of Confidential Information provisions – Tadros does not challenge these allegations of Count I in the Motion.

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the case. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012); *Mazzetta Co., LLC v. Simpson*, 2025 WL 777534, at *3 (N.D. Ill. Mar. 11, 2025). When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true, view them in a light most favorable to the plaintiff, and draw reasonable inferences in the plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *McReynolds*, 694 F.3d at 879. To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter…to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp.*, 550 U.S. at 544). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

I. **Plaintiff Properly Alleges That Tadros Breached the Agreement's Customer Nonsolicitation Restriction.**

To prove a breach of contract, a party must show "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). SP Plus has alleged sufficient facts to articulate a plausible claim for breach of contract claim predicated on the Agreement's customer nonsolicitation provision.

As a threshold matter, SP Plus not only set forth within the Complaint the relevant contractual language that it alleges to have been breached by Tadros, but it also attached the Agreement as an exhibit to the Complaint for full context. *See* Compl., ¶¶ 27-28, Ex. 1. The Complaint specifically includes the Agreement's language defining the customers covered by the nonsolicitation provision: "a customer or potential customer of the Company for such products

3

or services with which Employee had direct contact or about which Employee learned confidential information related to such products or services at any time during the 12 months preceding the termination of Employee's employment with the Company." Compl., ¶ 27.

Contrary to Tadros's assertion in his Brief (pp. 5-6), SP Plus has alleged ample facts to establish that Fifty Five East Monroe (identified as "Customer A" in the Complaint), and RIU Hotel (identified as "Customer B" in the Complaint) are covered by the Agreement's customer nonsolicitation provision. With respect to Fifty Five East Monroe, SP Plus alleged that this was a "customer with whom [Tadros] had direct contact or responsibility and about whom he acquired trade secret or confidential information during his employment with […] SP Plus…." Compl., ¶ 41. In the very next paragraph, SP Plus again describes Fifty Five East Monroe as one with whom Tadros "had regular, direct contact and about whom he knew confidential information" and further alleges that this customer canceled its "multi-year contract with SP Plus…shortly after Tadros's departure." Compl., ¶ 41. The clear meaning of these two clauses read together is that Fifty Five East Monroe was a SP Plus customer with whom Tadros had direct contact and about whom he knew confidential information during the last twelve (12) months of his employment with SP Plus.

Similarly, the Complaint sufficiently alleges that Tadros improperly participated in Shevket Dardovski's solicitation of the RIU Hotel, a prospective customer whose business Dardovski was trying to obtain on behalf of SP Plus at the time of Dardovski's departure. Compl., ¶ 44. The Complaint alleges that Tadros had and shared with Dardovski in early November 2024 confidential information belonging to SP Plus concerning the RIU Hotel; namely, a proposal for services. Compl., ¶ 45, Ex. 1 at § 1 (including "proposals," "business plans," "marketing plans," and "business and customer strategy" as examples of confidential

4

information covered by the Agreement). Tadros necessarily had confidential information about the RIU Hotel if he "shared" it with Dardovski. The Complaint also alleges that Dardovski resigned "just a few weeks before Tadros's [December 6, 2024] departure," Compl., ¶ 38, establishing that Tadros's knowledge of confidential information about the RIU Hotel overlapped with the last twelve (12) months of his employment with the Company. The allegations of wrongdoing by Tadros in the Complaint are, therefore, sufficiently detailed and consistent with the Agreement's language specifying which SP Plus customers Tadros is prohibited from soliciting during the restricted period.

Furthermore – and particularly at this early stage of the litigation when the parties have not yet engaged in discovery – the Complaint sufficiently alleges that Tadros breached the customer nonsolicitation provision with respect to both Fifty Five East Monroe and the RIU Hotel. In this regard, in Paragraph 42 of the Complaint, SP Plus alleges that Fifty Five East Monroe unexpectedly canceled its multi-year contract with SP Plus shortly after Tadros's departure, and in Paragraph 43, SP Plus alleges that Dardovski later bragged "at a Super Bowl party about how instrumental he **and Tadros** were in getting Customer A [*i.e.*, Fifty Five East Monroe] to move its business from SP Plus to LAZ." *Id.* (emphasis added). As for the RIU Hotel, the Complaint details how Tadros provided confidential information about this prospective customer to Dardovski, allowing for SP Plus's strategy for winning the RIU Hotel's business to be hijacked and participating in Dardovski's solicitation of the RIU Hotel on behalf of LAZ. *See* Compl., ¶ 45.

In short, SP Plus has plausibly alleged that Tadros breached the customer nonsolicitation provision of the Agreement. *See Mazzetta Co., LLC*, 2025 WL 777534, at *5.

5

II. **The Noncompete Provision of the Agreement is Enforceable and Further Analysis Requires A Fact-Based Determination that Is Inappropriate at this Stage.**

Because the Agreement's noncompete provision is valid and enforceable, SP Plus's breach of contract claim predicated on that provision should not be dismissed, either. Under Illinois law, "[f]or a valid and enforceable contract to exist ..., there must be an offer, acceptance of the offer, consideration, and mutual assent." *Kesseböhmer Retail Merchandising USA, Inc. v. Pete's Fresh Market 4700 Corp.*, 735 F. Supp. 3d 943, 949 (N.D. Ill. 2024). All of those elements are alleged in the Complaint: SP Plus and Tadros executed the Agreement, mutually assented to its certain terms in express writing, and Tadros received a promotion, continued employment, considerable compensation (salary, bonus, etc.), and access to SP Plus's trade secrets and other confidential information in exchange for his promises. *See* Compl., ¶¶ 24, 36, 57, Ex. 1.

In Illinois, a noncompete or nonsolicitation covenant "will be upheld if it contains a reasonable restraint and the agreement is supported by consideration." *Reliable Fire Equip. Co. v. Arredondo*, 358 Ill. Dec. 322, 325 (2011). A restrictive covenant will be found reasonable "if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public . . . Further, the extent of the employer's legitimate business interest may be limited by type of activity, geographical area, and time." *Id.* at 325-26.

*A. Tadros's Agreement Is Necessary To Protect SP Plus's Legitimate Business Interests*

Illinois recognizes a company's trade secrets, other confidential information, and customer relationships and/or goodwill as legitimate business interests that may be protected through restrictive covenants of the type at issue in this case. *See, e.g., Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 947 (7th Cir. 1994) ("a covenant not to compete may protect . . . trade

6

secrets, confidential information"); *Fisher/Unitech, Inc. v. Computer Aided Tech., Inc.*, 2013 WL 1446425, at *3 (N.D. Ill. Apr. 9, 2013) ("[t]here is no question that protecting confidential operational and customer information is a legitimate, protectable business interest of an employer.") (citing *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 274 (2007) (stating that "[e]vidence of confidentiality of information establishes [plaintiff] had a legitimate business interest to protect, *i.e.*, it is one type of significant matter supporting enforceability of the restrictive covenants.")); *Reliable Fire Equip. Co.*, 358 Ill. Dec. at 332 ("whether a legitimate business interest exists is based on the totality of the facts and circumstances of the individual case. Factors to be considered in this analysis include, but are not limited to, . . . the employee's acquisition of confidential information through his employment . . . ."); *A-Tech Computer Servs., Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 399 (1993) (explaining that "[a]n employer has a valid interest in protecting its long-standing client relationships against the subterfuge and sabotage of former employees.").

All of these interests are implicated here. During his employment with SP Plus, Tadros was provided with access to SP Plus's trade secrets and other confidential information, including customer names, contact information, and pricing and other customer-specific information. *See* Compl., ¶¶ 16, 17, 23, 35. This information allowed Tadros to maintain and develop strong client relationships and provide the kind of customer service that allows SP Plus to successfully compete against other companies that provide parking facility management and related services. *Id.,* ¶¶ 18, 33, 34.

While the protection of trade secrets and confidential information alone warrants the enforcement of Tadros's Agreement, Tadros also enjoyed the benefit of substantial customer goodwill belonging to SP Plus, which goodwill has been compromised and is further jeopardized

7

by his current solicitation of clients on behalf of himself and LAZ. *See, e.g., Brown & Brown, Inc. v. Ali*, 494 F. Supp. 2d 943, 955 (N.D. Ill. 2007) (although plaintiff lost only one customer, defendant's "active solicitation of [plaintiff's] customers ha[d] the potential to weaken [plaintiff's] relationships and goodwill with these customers . . . ."); Compl., ¶¶ 14-16. Throughout his tenure with SP Plus, Tadros had direct and frequent contact with SP Plus's customers. Compl., ¶¶ 14, 35, 42, Thus, Tadros is well positioned—because of the personal relationships with SP Plus's customers that SP Plus employed him to develop—to divert a substantial number of those customers to him at LAZ.

### B. *Tadros's Agreement Is Supported By Valid Consideration*

Tadros's Agreement is supported by his promotion to a Regional Director I role and the many years that he worked for – and earned a substantial salary plus bonuses from – SP Plus, as well as ongoing access to SP Plus's customer goodwill and its continuously updated trade secrets and other confidential information. *See*, *e.g.*, *Montel Aetnastak, Inc. v. Miessen,* 998 F. Supp. 2d 694, 715 (N.D. Ill. 2014) (finding that, "[i]n Illinois, continued employment for a 'substantial period' is sufficient consideration to support an employment agreement," and that 15 months employment constituted sufficient consideration); Compl., ¶¶ 24, 34-36

### C. *The Duration and Geographical Scope Are Reasonable and Create No Undue Hardship*

Despite Tadros's tortured interpretation set forth in the Brief (p. 10), the Agreement's noncompete restriction is reasonable in duration and territorial limits insofar as it lasts for twelve (12) months, and its geographic reach is curtailed to the area where he most recently worked for SP Plus. In particular, Tadros agreed that he would not be "…employed by any entity which is in competition with the Company within a 75 mile radius of any Company offices from which Employee worked during the 12 months preceding the termination of Employee's employment

with the Company." Compl., ¶¶ 25, 58, Ex. 1, § 3(c). Here, Tadros worked in SP Plus's office in Chicago (Compl., ¶¶ 1, 2, Ex. 1, p. 1), he had the most customer contact for SP Plus in the Chicago market (*id.*, ¶ 35), and now Tadros is currently employed by LAZ – SP Plus's direct competitor – as a Senior Business Development Manager of Transportation in the greater Chicago area (*id.*, ¶¶ 2, 11, 12, 59). Indeed, restrictive covenants have been upheld even where *no* geographic restriction is specified. *See e.g., Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.*, 308 Ill. App. 3d 337, 344 (1999) ("Covenants containing no geographic limitation have been upheld as reasonable where the purpose of the restriction was to protect the employer from losing customers to a former employee who, by virtue of his employment, gained special knowledge and familiarity with the customers' requirements."); *see also Baird & Warner Residential Sales, Inc. v. Mazzone*, 384 Ill. App. 3d 586, 593 (2008) (narrowly-tailored nonsolicitation covenant that would not render defendant "unemployable" deemed reasonable); *Midwest Television, Inc. v. Oloffson*, 298 Ill. App. 3d 548, 556-57 (1998) (100-mile radius of radio station's transmission tower found to be a reasonable geographic restriction).

      In a misplaced attempt to invalidate the noncompete provision, Tadros contends that the Agreement prevents him from working *anywhere in the world* for a SP Plus competitor if that entity competes within a 75-mile radius of SP Plus's office. That straw man argument simply is not a reasonable interpretation of the Agreement's noncompete provision. Rather, the logical and clear meaning of that provision is that for twelve (12) months following his termination, Tadros is restricted from working within a 75-mile radius of SP Plus's Chicago office for a SP Plus competitor. That 75-mile radius is necessary to protect SP Plus's legitimate business interests as it is co-extensive with the territory in which Tadros performed services on behalf of SP Plus and had the most involvement with its customers. Compl., ¶¶ 1, 2, 35, Ex. 1, p. 1. Even in a light

9

most favorable to *Tadros*, the phrasing of the Agreement's noncompete restriction is only arguably ambiguous and merits discovery as to its reasonableness – not dismissal of that portion of SP Plus's breach of contract claim. *See, e.g., Allied Waste Services of North America, LLC v. Tibble*, 177 F. Supp. 3d 1103, 1110 (N.D. Ill. 2016) ("…unless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record.").

   D. *Enforcement Of Tadros's Restrictive Covenants Is Consonant With The Public Interest*

Given that Illinois courts recognize and enforce restrictive covenants and that there is nothing unusual in this case, the public policy of permitting SP Plus to protect itself from unfair competition supports the enforcement of the restrictive covenants within Tadros's Agreement. *See Brosnan Risk Consultants, LTD. v. Murauskas*, 2022 WL 18670860, at *1 (N.D. Ill. 2022) (entering TRO to enforce customer nonsolicit provision and explaining that "there is a public interest in enforcing contracts"); *Automed Techs., Inc. v. Microfil, LLC,* 2006 WL 1647505, at *3 (N.D. Ill. June 7, 2006), *aff'd in part*, 244 F. App'x 354 (Fed. Cir. 2007) ("There is a clear public interest in enforcing valid contracts and in protecting companies' confidential information."). For all of these reasons, the Agreement's noncompete provision is valid and enforceable.

   E. *Determination of the Noncompete Provision's Enforceability Is Inappropriate at this Time.*

In any event, requesting the Court to make such a fact-based determination as to the reasonableness of the Agreement's noncompete provision is not appropriate at this stage of the proceedings. *See, e.g., Mazzetta Co., LLC*, 2025 WL 777534, at *5 (refusing to undertake a fact-based analysis as to the reasonableness of restrictive covenants on a motion to dismiss, stating that "the parties must be given an opportunity to develop the necessary evidentiary record"); *Allied Waste Services of North America, LLC*, at 1110 (denying a motion to dismiss breach of

10

contract claim where defendant contended that a noncompete restriction was unreasonable as a matter of law and finding that: "Because the facts of the case are of such importance to this issue, the Court does not find the prohibition against competition to be patently unreasonable and declines to make a determination as to the enforceability of the provision at this stage in the proceedings."). Consequently, the allegations in the Complaint are sufficient to survive the motion to dismiss stage.

### III.  SP Plus's Use of Pseudonyms in the Complaint is Not a Basis for Dismissal

SP Plus's use of the pseudonyms Customer A and Customer B in the Complaint for Fifty Five East Monroe and RIU Hotel, respectively, without first filing a motion to seal should not warrant dismissal under Fed. R. Civ. P. 12(b)(6).

As a threshold matter, SP Plus alleged enough identifying details about Tadros's misconduct in connection with these customers that their identities should have been readily apparent to him. Substantively, counsel for SP Plus shared the identities of Customer A and Customer B with counsel for Tadros via email on August 7, 2025. Consequently, even if Tadros truly did not know who those customers were previously, Tadros can no longer credibly argue that he is prejudiced in any way by keeping their identities concealed in the publicly filed Complaint. Tadros's request for dismissal of "all allegations and claims involving 'Customer A' and 'Customer B'" (Motion, p. 4) is a tempest in a teapot.

The pseudonyms are used for third parties to this litigation, not to hide the names of the litigants themselves from the public. If Tadros sincerely believed that his due process rights were being violated by the use of the pseudonyms (Motion, p. 4), all he had to do was have his attorney send an email to SP Plus's counsel and ask for the names. It is notable, however, that no such request was made before Tadros filed the Motion.

**IV.      In the Alternative to Partial Dismissal, SP Plus Should Be Granted Leave to Amend the Complaint.**

Fed. R. Civ. P. 15(a)(2) provides that the Court should freely give leave to a party to amend its pleading "when justice so requires." *Id.* Leave to amend may be denied where there is undue delay, bad faith by the moving party, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party if the amendment is allowed, or futility. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). However, such denials are disfavored. *Id.* "District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend [their] complaint." *Id.* (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

Here, if the Court finds that the original Complaint lacks sufficient allegations to state a plausible claim for breach of contract predicated on Tadros's violations of the customer nonsolicitation and/or noncompetition provisions within the Agreement, SP Plus requests that it be allowed an opportunity under Fed. R. Civ. P. 15(a) to submit an amended complaint to cure any such defects. There is no suggestion that any of the grounds for denying a request for leave to amend are present in this case.

## CONCLUSION

WHEREFORE, SP Plus respectfully requests that the Court deny the Motion and grant all other relief this Court deems fair and proper. In the alternative, SP Plus respectfully requests that it be granted leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a) to cure any deficiencies.

Dated:  August 27, 2025

Respectfully submitted,

SP PLUS LLC,

By its attorneys,

*/s/ Stephen D. Riden*
Stephen D. Riden, MA BBO No. 644451
*Admitted Pro Hac Vice*
   sriden@beckreed.com
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
Phone: (617) 500-8660
Fax: (617) 500-8665

Timothy D. Elliott
Christopher M. Miller
RATHJE WOODWARD LLC
300 E. Roosevelt Road, Suite 220
Wheaton, Illinois 60187
Phone: (630) 510-4910
Fax: (630) 668-9218
*telliott@rathjelaw.com*
*cmiller@rathjelaw.com*

## CERTIFICATE OF SERVICE

    I, Stephen D. Riden, an attorney admitted *pro hac vice*, hereby certify that on August 27, 2025, I caused a copy of the foregoing Plaintiff's Opposition To Defendant Jeries Tadros's Motion To Dismiss the Complaint, *In Part* to be filed with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                        */s/ Stephen D. Riden*
                                        Stephen D. Riden